# PHILADELPHIA, BALTIMORE, & WASHINGTON RAILROAD COMPANY *v.* KARR.*

CONTRACTS; INDEPENDENT CONTRACTOR; RAILROADS; SPLITTING OF CAUSES OF ACTION.

1. The doctrine of independent contractor exists only where the contractor engages to furnish all of the materials, do all of the work, and deliver the completed structure, according to plans and specifications furnished by the principal, the will of the principal being represented only in the result of the work, and not in the means by which it is accomplished.

2. Where a railroad company, authorized by law to construct a tunnel under a public street, employs a contractor to do the work, the company is nevertheless liable to an adjoining property owner for injury to his property resulting from the building of the tunnel, irrespective of the liability of the contractor to the property owner. (Citing *District of Columbia* v. *Blackman*, 32 App. D. C. 32.)

3. An injured party will not be permitted to split his cause of action into various suits where the cause of action is founded upon a single tort; and a judgment in such a cause will be a bar to a second suit for the same injury.

4. Where an injury to real property is caused by the construction of a tunnel by a railroad company under an adjacent public street, under authority of law, and the owner of the property brings his action for such injury after the completion of the work, he must recover for all of the injuries he has sustained, the act of the defendant not being a continuing nuisance; and in such an action, it is not error for the trial court to admit evidence offered by the plaintiff, showing that, subsequent to the filing of the suit, one of the houses on the property was found to be in such a dangerous condition, owing to the manner in which the tunnel had been constructed, that it had to be torn down, or to allow the plaintiff to show the diminution in the rental value of the property from the time of the happening of the injury to the date of the trial.

5. Where in an action by a property owner against a railroad company for damages to his property caused by the construction of a tunnel,

---

*Contracts—Independent Contractor.*—For an exhaustive note upon the subject of independent contractors, see *Richmond* v. *Sitterding*, 65 L.R.A. 445, and also the note supplementary thereto, *Knicely* v. *West Virginia Midland R. Co.* 17 L.R.A. (N.S.) 371.

authorized by law, under an adjoining public street, the defense was that the work was done by an independent contractor, which defense was found untenable by this court on an appeal by the defendant, and it appeared from the record that the trial court in one portion of its charge, over a general objection by the defendant, told the jury that if the damage to the plaintiff's property was caused by the withdrawal of the lateral support afforded by the bed of the street, their verdict should be for the plaintiff, otherwise for the defendant; and that this portion of the charge was only supplementary to granted special instructions for the plaintiff, to the effect that if they found that the injury to the property proximately resulted from the construction of the tunnel, their verdict should be for the plaintiff, to which instructions defendant objected only because they disregarded the doctrine of independent contractor; and it further appeared that the case was prosecuted and tried in the court below on the theory of negligence in the construction of the tunnel, which negligence the defendant did not deny,—it was *held,* affirming a judgment on verdict for the plaintiff, that the submission of the case to the jury upon the defendant's liability for the withdrawal of the lateral support without negligence, and the possible variance between the instructions and the evidence, were not errors prejudicial to the defendant; this court being of the opinion that the plaintiff was entitled to recover, whether negligence was shown or not, as the evidence showed that the injuries were the result of the construction of the tunnel. (Citing *Dana* v. *Rock Creek R. Co.* 7 App. D. C. 482.)

No. 2306.  Submitted December 6, 1911.  Decided February 5, 1912.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for injury to real property.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appellee, Jacob Karr, hereafter referred to as plaintiff, brought this action in the supreme court of the District of Columbia to recover damages for injury to real estate.  He is the owner of lot number 1, square 684, this city, upon which he had erected dwelling houses, known as numbers 46, 48, 50, 52, and 54 C street, Northeast, house number 54 being

on the corner of C and First streets, Northeast. Defendant company was "authorized and required" by the act of Congress of February 28, 1903 (32 Stat. at L. 909, chap. 856), to construct a tunnel under the west side of First street, immediately adjacent to house number 54. Defendant contracted with the New York Continental Jewell Filtration Company to construct the tunnel according to defendant's plans and specifications, and subject to the approval of its chief engineer. This action was brought against both the railroad company and the filtration company, but, owing to failure to procure service upon the contractor, the suit was prosecuted to judgment against the defendant company alone. From the judgment this appeal is taken.

It appears from the evidence that the base of the tunnel at the point on First street where it passes plaintiff's property is 42 feet below the paved surface of the street. It consists of two tubes. The center line between them runs 30 feet from the west building line on First street and 80 feet from the east building line. From the center, between the tubes to the outside line of the concrete wall of the west tube, is a distance of 24 feet, which brings the west line of the concrete wall within 6 feet of the west building line of the street. The timber arch or false work extended 6 feet beyond the outside concrete walls of the finished tunnel, thus extending the building operations of the tunnel exactly to the west building line of First street on a line with plaintiff's property, the east wall of house number 54 standing on the building line. The tunnel construction, therefore, extended to a point immediately up to the east wall of plaintiff's house and 10 feet below the bottom of its foundation. The house had a tower which projected 5 feet beyond the building line, or that distance over the false work or timber arch of the tunnel underneath.

The west tube of the tunnel was completed past plaintiff's property the first week in May, 1906, and the injuries complained of were first observed in March and April, 1906. The foundation of the tower or bay window of the corner house, number 54, began to sink. The east wall of the house settled

and· pulled toward the tunnel side, as did also the east wall of the adjoining house. The injuries to the corner house became so great that it had to be taken down because of its dangerous condition. Subsequent to the bringing of the suit, plaintiff caused a shaft to be sunk against the east wall of the corner house, which disclosed the fact that an open hold had been left as the result of the failure to properly backfill the space between the false work and the concrete wall of the tunnel. It is upon this state of facts that the right of action is based.

*Mr. Frederic D. McKenney, Mr. John S. Flannery,* and *Mr. William Hitz* for the appellant.

*Mr. A. E. L. Leckie, Mr. Creed M. Fulton, Mr. Joseph W. Cox,* and *Mr. John A. Kratz, Jr.,* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The first two assignments of error relate to the alleged non-liability of defendant. It contends that, if any right of action in fact exists, it must be against the filtration company alone as an independent contractor. The law of independent contractor is well settled. It exists only where the contractor engages to furnish all the materials, do all the work, and deliver a completed structure according to plans and specifications furnished by the principal, the will of the principal being represented only in the result of the work, and not in the means by which it is accomplished. *Casement* v. *Brown,* 148 U. S. 615, 37 L. ed. 582, 13 Sup. Ct. Rep. 672.

The contract between defendant and the construction company, among other things, provided: "The contractor is to provide all manner of labor, materials, apparatus, machinery, appliances, power, light, and all other things needful or necessary for the performance of the work in strict accordance with the attached drawings and specifications forming a part of this contract, .and to the satisfaction of the chief engineer of the railroad company, and shall make no subcontract for the

work upon said tunnel, excepting for the delivery of materials, without the consent, in writing, of said chief engineer. All work to be done under the supervision of the engineer of construction or assistant engineer in charge of the work   *   *   *, who shall decide all questions which may arise as to the quality and sufficiency of materials, the character and correctness of the work, and the payments therefor, and, should the contractor and said engineer fail to agree thereon, then said contractor may apply to said chief engineer, whose decision shall be final. *   *   *   The contractor shall deliver over the tunnels to said railroad company in a perfect, clean, and serviceable condition when completed."

Unquestionably the filtration company occupied the relation of an independent contractor within the rule. But this by no means operates to relieve the defendant from liability. It was intimated, without expression of opinion, in the case of *Casement* v. *Brown,* supra, where the suit was against the contractor and the contract was in terms the same as the one before us, that the action might have been maintained against the principal, if the injured party had so elected to bring his suit. The liability of the principal is in each case dependent not upon the queston of whether or not the tort is committed by an independent contractor, but upon whether the circumstances of the case are such as to prohibit the principal from contracting away his liability. In this instance, defendant acquired a right from Congress to construct the tunnel. The grant to defendant was a personal one. Congress, as guardian of the rights of the public in the use of the highway, either on the surface or under the surface, did not intend to grant to defendant the right to so construct its tunnel as to impair private rights without compensation. The franchise carried with it the liability, and defendant, in accepting the privilege, accepted the liability which could no more be contracted away than could the franchise itself.

The construction of a railroad tunnel is highly dangerous to property above and adjacent to it. Defendant was charged with knowledge of this fact, and it could not relieve itself from

exercising due care to prevent the mischief under the rule of independent contractor, by employing someone else to do the work. The rule laid down by the English courts is well expressed in *Bower* v. *Peate,* L. R. 1 Q. B. Div. 321, as follows: "A man who orders a work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be prevented, is bound to see to the doing of that which is necessary to prevent the mischief, and cannot relieve himself of his responsibility by employing someone else—whether it be the contractor employed to do the work from which the danger arises or some independent person—to do what is necessary to prevent the act he has ordered to be done from becoming wrongful. There is an obvious difference between committing work to a contractor to be executed, from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted. While it may be just to hold the party authorizing the work in the former case exempt from liability for injury, resulting from negligence which he had no reason to anticipate, there is, on the other hand, good ground for holding him liable for injury caused by an act certain to be attended with injurious consequences if such consequences are not in fact prevented, no matter through whose default the omission to take the necessary measures for such prevention may arise."

Thompson in his work on Negligence, 2d ed. sec. 672, summarizes the rule to be gathered from the American cases as follows: "It is that, whenever the independent contractor, in order to prosecute his work under his contract, must exercise, in whole or in part, a franchise granted by the legislature to his employer,—the railroad company,—the company must answer for his torts, because it is bound to see to the correct execution of the powers conferred upon it by the legislature. An enjoinment of this doctrine makes the company liable for all manner of trespasses of the contractor done while prosecut-

ing the work under his contract; because in every such case he is acting in virtue of the franchise conferred by the legislature upon the railway company; namely, the franchise of building a railroad. Without the possession of that franchise, the railroad company could not be there by its own servants, nor could it be there by an independent contractor. In such a case the persons employed by the company to exercise its powers are deemed, in law, to be its servants or agents, and it is answerable for their trespasses."

The present case comes clearly within the rule that, whatever the liability of the filtration company would be if before us, its absence cannot serve as a cloak to shield defendant. *Chicago* v. *Robbins,* 2 Black, 418, 17 L. ed. 298; *Robbins* v. *Chicago,* 4 Wall. 657, 18 L. ed. 427; *St. Paul Water Co.* v. *Ware,* 16 Wall. 566, 21 L. ed. 485; *District of Columbia* v. *Blackman,* 32 App. D. C. 32; *Woodman* v. *Metropolitan R. Co.* 149 Mass. 335, 4 L.R.A. 213, 14 Am. St. Rep. 427, 21 N. E. 482.

Defendant's third and fourth assignments of error relate to the admission of evidence showing the condition of plaintiff's houses subsequent to the institution of the suit, and to the instruction given the jury to award plaintiff, in fixing damages, the amount of the diminution in rental value of the property from the time of the happening of the injuries to the date of trial. These assignments charge as error the admission of evidence offered by plaintiff, showing that after this suit was instituted the corner house, number 54, was in such dangerous condition that it had to be taken down. The necessity for the removal of the house was shown by the testimony of the witnesses who sunk the hole at the foundation of the house, and discovered the defect in backfilling the false work. As the result of sinking the shaft, it was discovered that considerable additional expense would have to be incurred in putting in the foundation in case of rebuilding the house. On this the estimates given of the cost of rebuilding the house were made, both before and after the filing of the suit, those made after being higher than those given before, due to the

discovery of the increased cost in restoring the foundation. Evidence was also admitted, and made an element of damage, showing the depreciation of rental value from the time the injuries were sustained up to the time of the trial. Plaintiff alleged in his declaration in each of the three counts that the houses were "greatly weakened, damaged, and injured, the walls of said houses and premises settled and cracked, the floors sank and became out of plumb, the doors, window frames, and steps were distorted out of square, and the said houses and premises were otherwise greatly weakened, injured, and damaged, the rental value of said houses and premises, so as aforesaid let out and leased, was greatly lessened and reduced, the rents thereof, from the time aforesaid, and from thence hitherto have been, and still are, lost to the plaintiff, and the said houses rendered comparatively unsuitable as places of human habitation."

It is contended by counsel for plaintiff that plaintiff had but one cause of action, and was therefore compelled to recover in this suit for all the injuries he had sustained. We are impressed with this contention. The tunnel is a permanent structure, placed in the street by lawful authority. When it was completed the injury to plaintiff's property was done for all time, with no probable repetition of the injuries. It was not a continuing nuisance which might be abated. It was of such a permanent nature that no further injury, beyond that inflicted in its construction, could be reasonably contemplated. The continuing damage to plaintiff, through loss of rents or otherwise, resulted from the one wrongful act, which was properly embraced in a single suit. In order to recover in a single action, it was not necessary for plaintiff to delay the filing of his declaration until he was compelled to take down his house, or until the shaft had been sunk, to ascertain the additional expense entailed in restoring the foundation, or the exact amount he would lose in rents as the result of defendant's negligent and wrongful act.

The instances in which past, present, and prospective damages may be recovered in a single suit are clearly pointed out

in Sedgwick on Damages, 8th ed. sec. 95, where it is said: "If the injury is caused by erecting a structure or making a use of land which the defendant has a right to continue, the injury is regarded as committed once for all, and action must be brought to recover the entire damage, past and future. * * * A typical instance is an action against a railroad company for a nuisance caused by its embankment or other permanent structure. In such case, when the Constitution permits recovery, the great weight of authority is to the effect that the injured party may, and therefore must, recover compensation in one action for the entire loss. * * * Where any other lawful work of a permanent nature causes injury to the plaintiff for which he may recover, the rule is the same, and he must recover all his damages in one action."

An injured party will not be permitted to split his cause of action into various suits where the action, as in the present case, is founded upon a single tort. A judgment in such a case will be a bar to a second suit for the same injury. Sedgw. Dam. 8th ed. § 84; *Baltimore* v. *Merryman,* 86 Md. 584, 39 Atl. 98; *Fowle* v. *New Haven & N. Co.* 112 Mass. 334, 17 Am. Rep. 106; *Ridley* v. *Seaboard & R. R. Co.* 118 N. C. 996, 32 L.R.A. 708, 24 S. E. 730.

The fifth and last assignment of error is based upon an exception to a portion of the court's oral charge to the jury, in which they were instructed that plaintiff's case rested upon the theory that the defendant in constructing the tunnel had withdrawn from the property of plaintiff the lateral support afforded by the bed of First street, to which plaintiff was entitled; and that, if they should find that the damage was occasioned by the withdrawal of the lateral support, the verdict should be for plaintiff; but that, if they should find that the damage was not so caused, their verdict should be for defendant. No reason was given at the trial for the objection to this instruction. Defendant now contends that it is erroneous, in that: "(1) The doctrine of lateral support applies only between abutting landowners, and the railroad company was in no sense the owner of any portion of the bed or parking of First street; (2) it is

only applicable to the land in its natural state, and does not embrace any buildings or structures that may be erected thereon; and (3) no foundation for the application of any such doctrine or theory was laid in the pleadings in this case." None of these objections were advanced at the trial. The defendant relied wholly for its defense upon the doctrine of independent contractor. The instruction here complained of is only supplementary to the first two instructions given on behalf of plaintiff. They are as follows:

"1. The jury are instructed that if they find that the injury to the plaintiff's property, complained of in the declaration, proximately resulted from the excavation and construction of the railroad tunnel under the west side of First street, then their verdict should be for the plaintiff.

"2. If the jury find that, at the time of or after the construction of the tunnel under the west side of First street, the plaintiff's property along the line of the tunnel sank and settled so that said property was weakened, damaged, and injured, as alleged in his declaration; and if they further find that the excavation and construction of this tunnel was the proximate or producing cause of such weakened, damaged, and injured condition, then their verdict should be for the plaintiff."

To these instructions defendant objected solely upon the ground that they disregarded the doctrine of independent contractor. It will be observed that in these instructions the court placed the right of recovery broadly upon the injury having been occasioned by the construction of the tunnel. It follows from the evidence that, if due to the construction of the tunnel, it could only have occurred by the withdrawal of the lateral support.

Instructions 1 and 2 were equivalent, under the undisputed evidence in the case, to an instruction to return a verdict for plaintiff, but no objection was interposed upon that ground. Defendant, apparently admitting the absolute right of plaintiff to recover from someone, objected only on the ground that the damage had occurred through the negligence of the contractor, who should be held liable. The instruction complained of is

therefore only supplementary to, and explanatory of, instructions 1 and 2.

This case was prosecuted and tried upon the theory of negligence in the construction of the tunnel. The evidence fully sustains that theory, and it is not denied by defendant. It was defendant's contention that the negligence was the act of an independent contractor, to whom the liability should attach. The court, however, in the instructions to the jury ignored entirely the question of negligence, proceeding upon the theory that, if the damage resulted proximately from the construction of the tunnels, defendant was liable. The case, as given to the jury by the court, in effect, rests upon the right of plaintiff to maintain his action for injuries to his property caused by defendant's withdrawing from his buildings the lateral support in the bed of the street to which he was entitled. We will, therefore, proceed to determine whether the judgment can be sustained upon that theory.

We think that, under the doctrine of lateral support, the existence of negligence is not essential to the right of recovery for the damage sustained by plaintiff to his property. If the tunnel had been carefully and prudently constructed, but the damage had occurred to plaintiff's buildings by reason of the withdrawal of the lateral support in the bed of the street, the case, as to the right of recovery, would not be different. The right of an abutting property owner to the lateral support of the bed of a public street is different from the rule applied to adjoining property owners. In the latter instance the owner of land has a natural right of lateral support for his land from the adjoining land. But this right extends only to the land itself, and not to buildings or structures that he may erect thereon. If he erect a building on his land, he acquires no right to derive support for his building from the adjoining land of his neighbor. His right to lateral support is limited to his land, and not to the structures erected thereon. The reason for this rule between the adjoining property owners is tersely stated in the case of *Northern Transp. Co.* v. *Chicago,* 99 U. S. 635, 25 L. ed. 336, as follows: "It does not pro-

tect whatever is placed upon the soil increasing the downward and lateral pressure. If it did, it would put it in the power of a lot owner, by erecting heavy buildings on his lot, to greatly abridge the right of his neighbor to use his lot. It would make the rights of the prior occupant greatly superior to those of the latter."

The above case is chiefly relied upon by defendant, as relieving it from liability and establishing error in the giving of the instruction complained of. We think, however, that it is easily distinguishable from the case at bar. In that case the city of Chicago, by authority of the legislature of Illinois, was constructing a tunnel under the Chicago river at the La Salle street crossing. The suit was for consequential damages sustained by the transportation company by reason of being deprived of the use of the river for landing its boats, and of the use of the street in reaching its place of business. It was also claimed that, by reason of the construction of the tunnel, the walls of its buildings on the street side settled and cracked. The court held that there was no right of recovery, intimating, however, that had the construction work been done carelessly or negligently, the city would have been liable. The decision rested upon the right of the State, through the agency of the city, to improve its highways in such manner as to facilitate public traffic. Unquestionably, the State in its sovereign power, and the city as its agent, had full power over the streets of the city, to improve them for the purposes for which they were made highways, and the grant from the legislature carried with it all that was necessary to the exercise of the power granted.

But the case before us presents a very different situation. Defendant owns no interest in the street. The tunnel was not constructed to improve the highway for public use. It was purely a private enterprise for private use and profit. An improvement of a street by the city is the work of the city itself, for the benefit of all its inhabitants, while the use of a street by a railroad company, for the carrying on of its private business, is strictly a private use. True, the tunnel was constructed

by authority of Congress, and was required to be built under the west side of First street; but that does not affect the private nature of the work. The character of a railroad constructed under these conditions is not different from that of any railroad constructed under legislative authority upon a right of way acquired through the exercise of the right of eminent domain. In each instance the corporation is there by authority of law, with the same private objects in view.

The distinction between the liability for damages to abutting property owners upon a street, resulting from work done thereon by the municipality itself and by a private corporation, is well defined. In the case of *Dana* v. *Rock Creek R. Co.* 7 App. D. C. 482, where there was no actual invasion of the plaintiff's property and no physical injury to the property itself, this court, in sustaining the right to recover for damages sustained by reason of the railway's occupation of the street, said: "On the contrary, we regard the rule as well established and abundantly supported by authority, that there is a marked distinction in this regard between the liability of a municipality in the construction of its highways for its public purposes, and the liability of private corporations using the same highways under legitimate authority for their own private purposes and their own emolument. * * * There are many inconveniences and annoyances which, as members of a common society and participants in a common civilization, we are called upon individually to endure for the common good. When they are too remote, indirect, or intangible to be made the basis of pecuniary compensation, they fall into the category of *damnum absque injuria.* But it would be destructive of all private right, and a disgrace to our jurisprudence, to hold that in that category are included such acts as are complained of in this case. We do not think that, either upon principle or authority, we are required so to hold."

Probably the leading case upon the question of the liability of a railroad company for removing the lateral support of abutting property in making authorized excavations in a public street is *Baltimore & P. R. Co.* v. *Reaney,* 42 Md. 117. There

the plaintiff's buildings were injured by the settling of the ground, occasioned by the construction of a tunnel through one of the streets of the city of Baltimore, under circumstances almost identical with those in the present case. The tunnel was constructed by authority of the legislature of Maryland and the city. There was no evidence that the work had been negligently performed. The court, applying the law to this state of facts, said: "As against the municipal government, in the careful exercise of its right and power to grade, change, and improve the street, there could be no cause of action for any unavoidable injury done; but as against the appellants, a private corporation in nowise connected with the municipal government, obtaining authority to use the streets in an extra-ordinary manner, for its own private purposes and profit, the case is quite different. As against such party, the owner of a plot of ground, with a building thereon, bounding on a street, is entitled to the natural support which the bed of the street may afford to the foundation of his house. And notwithstand-ing authority may have been obtained both from the city and State legislature, to make the extraordinary use of the street, yet that authority must be exercised at the peril of the party to whom it is delegated; and, if any injury accrues to private property in the exercise of the power, the party producing it must be held liable. If, as we have seen, the injury be pro-duced by the careless or negligent exercise of the authority, then there can be no question of the liability; but if due care be exercised, and the injury is the natural or inevitable result or consequence of the doing the act authorized to be done, then, in a case like the present, the party doing the act and produc-ing the injury must indemnify the sufferer. That there was no negligence or want of care in doing the work is no answer in a case like this. If the injury was the inevitable result of making the tunnel, then, to the extent that the appellee's prop-erty was actually injured, it was substantially taken for the use of the appellants' road, and, of course, should be paid for. It is not to be assumed that either the city authorities or the legislature of the State intended that the authority delegated by

them be exercised irrespective of the rights of private property; and if it were clear that they did so intend, it is far from being certain that such a purpose could be accomplished. *Gardner* v. *Newburgh,* 2 Johns. Ch. 162, 7 Am. Dec. 526; *Eaton* v. *Boston, C. & M. R. Co.* 51 N. H. 504, 12 Am. Rep. 147; *Pumpelly* v. *Green Bay & M. Canal Co.* 13 Wall. 166, 20 L. ed. 557."

In the present case the damage to plaintiff's property is so great, and the evidence that it was occasioned by the negligent construction of the tunnel is so conclusive, that we are not disposed to set aside the judgment upon any technical rule of pleading or surmise as to the effect the instructions may have had upon the jury. No claim is made that the verdict is excessive, nor do we think such a contention could be justly entertained. Unless, therefore, the variation between the instructions and the evidence is sufficient to render the judgment void, we would be loath to disturb it.

While it is true that the trial justice, in his instructions to the jury, entirely ignored the question of negligence, his charge is not inconsistent with the first and third counts of the declaration. The variation between the instructions and the proof adduced, which especially supported the second count of the declaration, was not called to the attention of the court below, and, inasmuch as the variance is not fatal to the validity of the judgment, the doubtful error will be deemed to be waived.

It is difficult to understand just how defendant could have been prejudiced by the submission of the case upon the theory of liability for withdrawal of lateral support without negligence, since, as we have observed, defendant would have been liable on either theory. The negligent withdrawal of lateral support from a building will render even an adjoining property owner or a municipality liable. If the court had instructed the jury that it could only find for the plaintiff, if satisfied that the injuries were inflicted through the negligent construction of the tunnel, and a verdict had been returned for defendant, it would have been reversible error, inasmuch as plaintiff was entitled to recover as matter of law, upon it ap-

pearing, as it did by the undisputed evidence, that the injury was the direct result of the construction of the tunnel, whether the work was performed negligently or not.

The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*