PAULINE NEWMAN, Circuit Judge,
dissenting.
It is not disputed that the heliport leasehold owned by Air Pegasus lost all value upon government prohibition of helicopter traffic in the area of the National Capital. The question is not whether Air Pegasus had property, for a leasehold is property. Nor is the question whether the government had the right to close the area at South Capital Street to helicopter traffic. In exercising that right, the government directly deprived the heliport leasehold of its value. This action in the interest of national security, taken abruptly and without notice, transcended any reasonably foreseeable regulatory action. Thus the devaluation of the leasehold falls squarely within law and precedent, for a governmental taking of property rights within the cognizance of the Fifth Amendment. From my colleagues’ contrary ruling I must, respectfully, dissent.
The panel majority holds that because an airport operator knowingly enters a highly regulated industry, he bears the risk of regulatory action by government. I agree. However, the act of closing the airspace around the National Capitol to helicopter traffic is not routine regulation, and it is not disputed that this action was not reasonably foreseeable. The sudden and total prohibition of Air Pegasus’ business was not an ordinary regulatory act in ordinary times, but an extraordinary response to a catastrophic event. This unforeseeable governmental action rendered Air Pegasus’ leasehold valueless. See Pennsylvania Coal Co. v. Mahon 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (“while property may be regulated to a certain 'extent, if regulation goes too far it will be recognized as a taking”).
Air Pegasus argues that compensation is prescribed by the Fifth Amendment policy explained in Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) and in Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 123, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), that the Amendment is designed “to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.” The courts are charged to consider this fundamental question: the placement of the economic burden of the government’s actions in the national interest. That is, does Air Pegasus alone bear the financial consequences of enhanced security in the National Capitol, or does the nation share this burden?
My colleagues on this panel do not discuss this question, and although they agree that “Air Pegasus owns a property interest in its leasehold,” Op. at 1216, they conclude that the extinction of that property interest raises no issue under the Fifth Amendment. It is established that leaseholds are compensable property interests under the takings clause. See, e.g., United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); Sun Oil Co. v. United States, 215 Ct.Cl. 716, 572 F.2d 786 (1978). And it is not disputed that the closing of the airspace to helicopter traffic deprived the leasehold of its value, raising the “clear principle of national equity that the individual whose property is thus sacrificed must be indemnified.” Pumpelly v. Green Bay & Mississippi Canal Co., 13 Wall. 166, 80 U.S. 166, 179, 20 L.Ed. 557 (1871).
*1221 Thus the court’s holding that Air Pegasus had no compensable property right is contrary to long-established precedent. Our predecessor court so recognized, holding in Bydlon v. United States, 146 Ct.Cl. 764, 175 F.Supp. 891 (1959), that where the government imposed a prohibition on air traffic below 4,000 feet over the Superior National Forest for environmental reasons, resort owners who had a way of necessity through the air space in order to reach their property were entitled to just compensation. In Griggs v. Allegheny County, 369 U.S. 84, 88, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Court explained that “An invasion of the ‘superadjacent airspace’ will often ‘affect the use of the surface of the land itself,’ ” quoting United States v. Causby, 328 U.S. 256, 265, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), settling that property rights in land may be affected by activity in the air. The panel majority departs from precedent in describing the injury to Air Pegasus as “derivative” and thus not compensable, for the injury was the direct consequence of the prohibition on helicopter traffic.
The majority deems it dispositive that air commerce is heavily regulated. However, even “pervasive” regulation does not preclude application of Fifth Amendment principles. When applying the law of regulatory takings as set forth in Penn Central, 438 U.S. at 124, 98 S.Ct. 2646, it is necessary to determine how the particular government action affected the reasonable investment-backed expectations of the property owner. Central to the application of takings jurisprudence in regulated industry is the question of whether the property owner should reasonably have foreseen the governmental action, and thus is properly charged with the risk of its occurrence. Unlike for example the situation in Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 226-27, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (plaintiff had been on notice for years of the potential regulation), relied on by the Court of Federal Claims, Air Pegasus is surely correct that the total shutdown of helicopter activity due to terrorist attack is not an action that it should have reasonably foreseen in entering into its long-term leasehold. In Cienega Gardens v. United States, 331 F.3d 1319, 1331 (Fed.Cir.2003) the Federal Circuit again explored and again rejected the argument that government action in a “pervasively regulated industry” can never constitute a taking of private rights, in that case holding that despite the highly regulated federal housing program, the enactment of legislation preventing the owners of low-income apartments from prepaying their federally subsidized mortgages after twenty years, thus freeing themselves from regulatory restrictions governing mortgages, was a taking of their property. See also United Nuclear Corp. v. United States, 912 F.2d 1432 (Fed.Cir.1990) (compensable taking found in highly regulated mining industry).
The Court of Federal Claims did not reach the question of whether there was a taking, for the court based its decision on its holding that Air Pegasus had no com-pensable property interest because of the pervasive regulation of air traffic. Thus the trial court did not consider the regulatory factors identified in Penn Central, 438 U.S. at 124, 98 S.Ct. 2646, viz., the character of the government action, the economic impact of the regulation on the claimant, and the extent to which the regulation interfered with distinct investment-backed expectations. Although there is no question that the federal government has extensive authority over air commerce and traffic, see City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 627, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) (preemption of State authority), actions of the federal government pursuant to its authority under the Commerce Clause can, and often do, result in takings. The *1222 fact that the federal government possesses a “servitude” in navigable space, including airways, does not insulate it from the consequences of a taking. See, e.g., Kaiser Aetna v. United States, 444 U.S. 164, 172, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979) (“this Court has never held that the federal navigational servitude creates a blanket exception to the Takings Clause whenever Congress exercises its Commerce Clause authority to promote navigation”); Palm Beach Isles Associates v. United States, 208 F.3d 1374, 1384-86 (Fed.Cir.2000) (same), reh’g on other grounds, 231 F.3d 1354 (Fed.Cir.2000).
Even an environment of “pervasive” regulation does not mean that all regulatory changes will be reasonably foreseeable in that environment. Air Pegasus cannot reasonably be charged with accepting the commercial risk of the 9/11 terrorist attacks and the immediate government response by closing the airspace, which clearly were different in kind as well as degree from any reasonable regulatory limitation before 9/11. See Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 226-27, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986) (plaintiff was on notice for years of a projected future regulation); M & J Coal Co. v. United States, 47 F.3d 1148 (Fed.Cir.1995) (no compensation where plaintiff was barred from conducting mining operations in violation of a pre-existing regulatory standard).
The Court of Federal Claims and my colleagues appear to have been diverted by the government’s concentration on the concept of who “owns” the air, thus ignoring the effect of the government action on the heliport leasehold. The result negates the basic rights and protections secured by the Fifth Amendment, and places the financial burden of emergency government action for national security, on the property owner whose property became valueless. Precedent makes clear that Air Pegasus indeed possessed a compensable property interest in Fifth Amendment terms. From my colleagues’ contrary decision, I respectfully dissent.