Construction of a flood control gate on a navigable waterway by the United States Army Corps of Engineers is said to have caused substantial quantities of silt to be deposited in plaintiffs marina, allegedly impairing its use and damaging the business. Plaintiff asserts a Fifth Amendment taking and seeks a trial. Defendant has moved for judgment on the pleadings, contending that plaintiff has failed to state a claim upon which relief can be granted because its rights in the area are wholly subject to the Government’s dominant navigation servitude. On the basis of the parties’ submissions, but without oral argument, we grant defendant’s motion and dismiss the petition.
For the purposes of defendant’s motion, we take the following facts to be put forth by plaintiff: Lentze Marina, Inc. (Lentze) owns and operates a marina on Thorns Creek in West Keansburg, New Jersey. Thorns Creek and *640 Wayside Creek share a common channel which empties into Raritan Bay. Prior to the acts complained of, plaintiff states that, "forty foot and bigger charter, fishing and pleasure boats were able to proceed without difficulty from Raritan Bay into Thorns Creek into the Lentze Marina and other marinas out to Raritan Bay at both high and low tides, and these boats docked at the Lentze Marina.” In 1970, pursuant to the Flood Control Act of 1962, 33 U.S.C. 701(s), the Corps of Engineers began construction of a flood control project which involved the building of concrete walls on both sides of the Thorns Creek-Wayside Creek channel to accommodate a flood control gate (a "hurricane” gate) and other flood control facilities. This work was completed by 1974. Plaintiff says (and we assume for present purposes) that the channel construction agitated the waters of the creeks, and the tidal action of Raritan Bay caused substantial quantities of suspended materials to be deposited in the water of Lentze Marina. It is asserted that, at the present time, boaters cannot leave or enter the marina during low tide and at times craft become stuck in the marina’s mud; only during high tide can boats easily pass between Lentze Marina and Raritan Bay; unpredictable closures of the hurricane gate have caused additional difficulties for marina boaters. As a result, plaintiff says, its business as a docking facility has suffered.
The parties agree that Thorns Creek and Wayside Creek are navigable waterways. In view of plaintiffs representation in its petition that in 1972 and prior years craft over forty feet in length, including charter boats, used the marina,[1] the court also deems it plain that the marina itself was,[2] and remains,[3] navigable in fact.
*641 Plaintiff originally filed its action in the United States District Court for New Jersey against the Corps of Engineers, the State of New Jersey, and other parties. The District Court transferred Count I of the complaint to this court pursuant to 28 U.S.C. § 1406(c). In Count I Lentze contends that the depositing of materials in the marina basin, not within the navigable creek, is an invasion of private property constituting a compensable taking under the Fifth Amendment. The Government’s navigation servitude is said to be inapplicable to this case because the primary purpose of the project was flood control, not to improve navigation; the allegation is that the project has in fact impeded navigation by blocking the channel and clogging the marina. Plaintiff also charges that the Corps of Engineers was negligent in its construction and operation of the project.
This court decided questions very close to those now presented in Allen Gun Club v. United States, 180 Ct. Cl. 423 (1967). That claimant owned land, partly upland and partly submerged, known as Muscooten Bay, situated along the Illinois River, which the plaintiff used for duck hunting and fishing. The Corps of Engineers initiated a flood control program in the vicinity which caused silting on the submerged portion of plaintiffs land and a delta formed so that the land became "too dry for ducks and too wet to plow.” Id. at 428. Dismissing plaintiffs taking claim, the court first determined that Muscooten Bay had been and continued to be a navigable waterway of the United States. As such, the Government possessed an inherent easement in its navigable waters up to mean or ordinary high water mark (including the submerged part of the claimant’s land). The navigation servitude applied though the project’s purpose was flood control, for flood control aids navigation, see United States v. Twin City Power Co., 350 U.S. 222, 223-24 (1956); United States v. Grand River Dam Authority, 363 U.S. 229, 231-33 (1960). As stated in Allen Gun Club, supra, at 430:
The navigation easement enables the Government, under the commerce clause, to employ submerged lands under navigable water for a variety of purposes helpful to commerce, including flood control. United States v. Appalachian Power Co., supra, at p. 426. The *642 works herein, separately considered, may have impaired navigation of Muscooten Bay; indeed, the Army Engineers seem to expect to fill the entire Bay with silt eventually, except for the one clear channel. But the Congress, and those to whom it has delegated authority, may, without Fifth Amendment liability, employ land submerged under navigable water in the way that in their best judgment helps to accomplish the overall purpose even if, intentionally or not, they impair navigation for some purposes in some areas. United States v. Commodore Park Inc., 324 U.S. 386 (1945).
The same rationale applies to the case now before us. Because Lentze’s marina basin is part of navigable waterways, it is subject to the navigation servitude and compensation need not be paid for silt deposited (as a result of the federal project) on the marina bottom. It makes no difference that the siltation resulted from a flood control project; by now it is settled that flood control presumptively fosters navigation. See Coastal Petroleum Co. v. United States, 207 Ct. Cl. 701, 708-09, 524 F.2d 1206, 1210 (1975)[4] Plaintiff also implies that the navigation servitude is inapplicable here because the Lentze marina was artifi-cally created by excavation. This proposition was correctly rejected in United States v. Kaiser Aetna, 584 F.2d 378 (9th Cir. 1978), which held that a fishpond lost its character as such and became subject to the Government’s navigation servitude when it was converted into a navigable marina. The court said: "Even fast land appurtenant to a waterway can by excavation be submerged and rendered a part of the waterway and should this occur the land loses its character as fast land and takes on the character of submerged land.” Id. at 383. See also, Weiszmann v. Dist. Eng’r, U.S. Army Corps of Eng’rs, supra, 526 F.2d 1302 (5th cir. 1976).
Plaintiff incorrectly analogizes its case to those finding a taking of fast land either as a result of flooding, United States v. Kansas City Life Ins. Co., 339 U.S. 799 (1950), or the deposit of sand upon fast land as a result of flooding, Coates v. United States, 117 Ct. Cl. 795, 93 F.Supp. 637 (1950). The court’s holding in Coates, for example, was *643 "based upon the finding that the Government’s actions had raised the Missouri River above its ordinary high-water mark and directly caused the destruction of plaintiffs land.” Pitman v. United States, 198 Ct. Cl. 82, 87, 457 F.2d 975, 977 (1972). The navigation servitude, "reserves to the Federal Government a dominant interest in all submerged property within navigable waters, below mean ordinary high water mark.” Coastal Petroleum Co. v. United States, supra, 207 Ct. Cl. 701, 707, 524 F.2d 1206, 1209 (1976) (emphasis added). Here there is no allegation of an invasion of fast land, or of property above the mean or ordinary high-water mark.
As for plaintiffs negligence claim, sounding in tort, that clearly is not within the jurisdiction of this court. 28 U.S.C. § 1491 (1976); Somali Development Bank v. United States, 205 Ct. Cl. 741, 508 F.2d 817 (1974).
it is therefore ordered that defendant’s motion for judgment on the pleadings is granted and plaintiffs petition is dismissed.
Plaintiffs motion for rehearing and suggestion for rehearing en banc were denied April 27, 1979.

 Defendant’s answer denies this factual allegation but for purposes of the motion before us it is plaintiffs allegation which is significant.

 See Weiszmann v. Dist. Eng'r., U.S. Army Corps of Eng’rs, 526 F.2d 1302, 1305 (5th Cir. 1976), discussing the concept of "navigable” waters. Under the Supreme Court’s decision in United States v. Appalachian Power Co., 311 U.S. 377 (1940), the factual inquiry is whether the water "has 'capability of use by the public for the purposes of transportation and commerce.’ ” Id. at 410. "Nor is the lack of commercial traffic a bar to the conclusion of navigability where personal or private use by boats demonstrates the availability of the stream for the simpler types of commercial navigation.” Id. at 416.

 The court noted in Alien Gun Club v. United States, 180 Ct. Cl. 423, 429 (1967): "* * * the rule is well established that a body of water does not lose by subsequent disuse the character, once acquired, of being part of the system of Federal navigable waters. Economy Light & Power Co. v. United States, 256 U.S. 113 (1921).”

 Statements incorporated in flood control legislation evince Congressional intent to aid navigation through flood control, see Declaration of Policy of 1944 act, 33 U.S.C. § 701-1 (1976); Declaration of Policy of 1936 act, 33 U.S.C. § 701a (1976); Act of June 30, 1948, ch. 771, § 203, 62 Stat. 1175.