Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The second plea, the most important, is technically liable to the objection that it relies on two substantially different grounds of defence, but as the demurrer was general and
 
 *175
 
 not special, and as the part of it which sets up the first of these defences may be treated as- mere inducement to the other, we will consider whether there is found in the plea any sufficient defence to the cause of action set out in the declaration.
 

 This first part of the plea is clearly designed to present this defence, that the dam was authorized by statute and built in conformity to the specific requirements of the act, so that the defendants are not liable for exceeding the authority which it conferred, and that for any injury to the plaintiff’s property arising from this lawful erection of the dam his only remedy was the one provided in the act referred to, concerning mills and mill-dams. As this enacted that persons whose lands were overflowed might obtain compensation upon complaint before the District Court of the county where the land lay, and that no action at common law should be sustained for such damages, except as provided in the act; if the remainder of the plea is good, it is a defence to the present suit. But this part of the plea is defective in this. It is contended by the counsel for the defendants that the second section of the act authorizes them to build their dam seven feet above high-water mark of the
 
 river
 
 at all events, and that the restriction that the water of the
 
 lake
 
 shall not be raised above its ordinary level is only applicable to such raising, if the dam should exceed the first limitation; while the counsel for the plaintiff’ asserts that both limitations were effectual, and that if the dam raised the water in the lake above its ordinary level the law was violated, though it may not have reached the seven feet above, high-water of the river.
 

 It will be seen that the plea, in averring that the dam, when completed, was no higher than the statute authorized, pleads a conclusion of law,,and does not state the facts on which the court can construe the law for itself and ascertain if the fact pleaded is a good defence. This is bad pleading. It is also liable to the objection that it does not either deny the allegation of the declaration, that the dam raised the water in Winnebago Lake so as to overflow the plaintiff’s land,
 
 *176
 
 nor admit that allegation and aver that they were authorized to do bo by the statute. But, as we are of opinion that the statute did not authorize the erection of a dam which would raise the water of the lake above the ordinary level, and as the plea does not deny that the dam of the defendant did so raise the water of the lake, we must hold that, so far as the plea relies on this statute as a defence, it is fatally defective.
 

 But this same plea further alleges that the legislature of Wisconsin, after it became a State, projected a system of improving the navigation of the Fox and Wisconsin Rivers, which adopted the dam of Reid and Doty, then in process of construction, as part of that system; and that, under that act, a board of public works was established, which made such arrangements with Reid and Doty that they continued and completed the dam ; and that, by subsequent legislation, changing the organization under which the work was carried on, the defendants finally became the owners of the dam, with such powers concerning the improvement of the navigation of the river as the legislature could confer in that regard. But it does not appear that any statute made provision for compensation to the plaintiff, or those similarly injured, for damages to their lands. So that the plea, as thus considered, presents substantially the defence that the State of Wisconsin, having, in the progress of its system of improving the navigation of the Fox River, authorized the erection of the dam as it now stands, without any provision for compensating the plaintiff for the injury which it does him, the defendant asserts the right, under legislative authority, to build and continue the dam without legal responsibility for those injuries.
 

 And counsel for the defendant, with becoming candor, argue that the damages of which the plaintiff’complains are such as the State had a right to inflict in improving the ■navigation of the Fox River, without making any compensation for them:
 

 This requires a construction of the Constitution of Wisconsin; for though the Constitution of the United States provides that private property shall not be taken for public
 
 *177
 
 use without just compensation, it is well settled that this is a limitation on the power of the Federal government, and not on the States. The Constitution of Wisconsin, however, has a provision almost identical in language, viz.: that “ the property of no person shall be taken for public use without just compensation therefor.”
 
 *
 
 Indeed this limitation on the exercise of the right of eminent domain is so essentially a part of American constitutional law that it is believed that no State is now without it, and the only question that we are to consider is whether the injury to plaintiff’s property, as set forth iu his declaration, is within its protection.
 

 The declaration states that, by reason of the dam, the water of the lake was so raised as to cause it to overflow all his land, and that the overflow remained continuously from the completion of the dam, in the year 1861, to the commencement of the suit in the year 1867, and the nature of the injuries set out iu the declaration are such as show that it worked an almost complete destruction of the value of the land.
 

 The argument of the defendant is that there is no
 
 taking
 
 of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation.
 

 It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be hold that if the government refrains from the absolute conversion of •real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury
 
 *178
 
 to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not
 
 taken
 
 for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors.
 

 In the case of
 
 Sinnickson
 
 v.
 
 Johnson,
 

 *
 

 the defendant had been authorized by an act of the legislature to shorten the navigation of Salem Creek by cutting a canal, and by building a dam across the stream. The canal was well built, but the dam caused the water to overflow the plaintiff’s land, for which he brought suit. Although the State of New Jersey then had no such provision in her constitution as the one cited from "Wisconsin, the Supreme Court held the statute to be no protection to the action for damages. Dayton, J., said
 
 “
 
 that this power to take private property reaches back of all constitutional provisions; and it seems to have been a settled principle of universal law that the right to compensation is an incident to the exercise of that power; that the one is inseparably connected with the other; that they may be said to exist, not as separate and distinct principles, but as parts of one and the same principle.” For this proposition he cites numerous authorities, but the case is mainly valuable here as showing that overflowing land by backing the water on it was considered as “taking” it within the meaning of the principle.
 

 In the case of
 
 Gardner
 
 v. Newburgh,
 
 †
 
 Chancellor Kent granted an injunction to prevent the trustees of Newburg from diverting the water of a certain stream flowing over plaintiff’s land from its usual course, because the act of the legislature which authorized it had made no provision for compensating the plaintiff for the injury thus done to his land. And he did this though there was no provision in the
 
 *179
 
 Constitution of New York such as we have mentioned, and though he recognized that the water was taken for a public use. After citing several continental jurists on this right of eminent domain, he says that while they admit that private property may be taken for public uses when public necessity or. utility requires, they all lay it down as a clear principle of natural equity that the individual whose property is thus sacrificed must be indemnified. And he adds that the principles and practice of the English government are equally explicit on this point. It will be seen in this case that it was the diversion of the water from the plaintiff’s land, which was considered as taking private property for public use, but which, under the argument of the defendants’ counsel, would, like overflowing the land, be called only a consequential injury.
 

 If these be correct statements of the limitations upon the exercise of the right of eminent domain, as the doctrine was understood before it had the benefit of constitutional sanction, by the construction now sought to be placed upon the Constitution it would become an instrument of oppression rather than protection to individual rights.
 

 But there are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be, in the language of Mr. Angelí, in his work on water-courses, equivalent to the taking of it, and that under the constitutional provisions it is not necessary that the land should be absolutely taken.
 
 *
 
 And perhaps no State court has given more frequent utterance to the doctrine that overflowing land by backing water on it from dams built below is within the constitutional provision, than that of Wisconsin. In numerous eases of this kind under the Mill and Mill-dam Act of that State this question has arisen, and the right of the mill-owner to flow back the water has
 
 *180
 
 been repeatedly placed on the ground that it was a taking of private property for public use. It is true that the court has often expressed its doubt whether the use under that act was a public one, within the meaning of the Constitution, but it has never been doubted in any of those cases that it was such a
 
 taking
 
 as required compensation under the Constitution.
 
 *
 
 As it is the constitution of that State that ive are called on to construe, these decisions of her Supreme Court, that overflowing land by means of a dam across a stream is taking private property, within the meaning of that instrument, are of special weight if not conclusive on us. And in several of these cases the dams were across navigable streams.
 

 It is difficult to reconcile the case of
 
 Alexander
 
 v.
 
 Milwaukee,
 

 †
 
 with those just cited, and in its opinion the court seemed to feel the same difficulty. They assert that the weight of authority is in favor of leaving the party injured without remedy when the damage is inflicted for the public good, and is remote and consequential. There are some strong features of analogy between that case and this, but we are not prepared to say, in the face of what the Wisconsin court bad previously decided, that it would hold the case before us to come within the principle of that case. At all events, as the court rests its decision upon the general weight of authority and not upon anything special in the language of the Wisconsin bill of rights, we feel at liberty to hold as we do that the case made by the plaintiff’s declaration is within the protection of the constitutional principle embodied in that instrument.
 

 We are not unaware of the numerous cases in the State courts in which the doctrine has been successfully invoked that, for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers, and other highways, for the public
 
 *181
 
 good, there is no redress; and we do not deny that the principle is a sound one, in its proper application, to many injuries to property so originating. And when, in the exercise of our duties here, we shall be called upon to construe other State constitutions, we shall not be unmindful of the weight due to the decisions of the courts of.those States. But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and, in some cases, beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle. Beyond this we do not go, and this case calls us to go no further.
 

 We are, therefore, of opinion that the second plea set up no valid defence, and that the demurrer to it should have been sustained.
 

 The fourth plea recites substantially the same statutes, and acts of the defendants and their predecessors as the second plea, and avers that the dam was completed to its present height in 1852, and that the defendants have ever since had, used, and enjoyed the easement of overflowing the plaintiff’s lands with his acquiescence, and that they had done this under color of right-, and as they lawfully might do.
 

 If this is intended as a plea of prescription for an easement the time is not long enough. It requires twenty years. If it is designed as a plea of disseizin it is bad, because it avers that the plaintiff’ has all the time been seized in fee and in possession of the land in controversy.
 

 But the foundation of the plea seems to be the authority conferred by the various statutes of Wisconsin mentioned in the second plea. We have already held that the defendants
 
 *182
 
 were not protected by the act of March 10th, 1848, because they exceeded the authority conferred bj it, and that, as to the plaintiff’s rights, the subsequent, statutes were void because they contained no provision for compensation. There is, therefore, no light in w'hich we can view this fourth plea that makes it a good one. The demurrer to it should have been sustained.
 

 The sixth plea, after setting up all the matters alleged in the second, aud also that by the Ordinance of 1787 and the subsequent legislation of Congress, the navigable streams of that territory were to be forever preserved as free highways, then avers that the land of the plaintiff' came to him through a reservation in an Indian treaty in favor of one Therese Pacquett, who received a patent from the United States in 1849. It is alleged that this title came to the plaintiff burdened with an easement in favor of improving the navigation of the Pox River, which authorized the injuries complained of, and of which, therefore, he could not complain.
 

 We do not think it necessary to consume time in proving that when the United States sells land by treaty or otherwise, and parts with the fee by patent without reservations, it retains no right to take that land for public use without just compensation, nor does it confer such a right on the State within which it lies; and that the absolute ownership and right of private property in such laud is not varied by the fact that it borders on a navigable stream.
 

 The demurrer to this plea should also have been sustained.
 

 Judgment reversed, and the case remanded to the Circuit Court for further proceedings
 

 Not inconsistent with this opinion.
 

 *
 

 Sec. 13, Article 1.
 

 *
 

 2 Harrison, New Jersey, 129.
 

 †
 

 2 Johnson’s Chancery, 162.
 

 *
 

 Angelí on Water-courses,
 
 \
 
 465 a; Hooker v. New Haven and Northampton Co., 14 Connecticut, 146; Rowe
 
 v.
 
 Granite Bridge Co., 21 Pickering, 344; Canal Appraisers
 
 v.
 
 The People, 17 Wendell, 604; Lackland
 
 v.
 
 North Missouri Railroad Co., 31 Missouri, 180; Stevens v. Proprietors of Middlesex Canal, 12 Massachusetts, 466.
 

 *
 

 Pratt
 
 v.
 
 Brown, 3 Wisconsin, 613; Walker
 
 v.
 
 Shepardson,
 
 4
 
 Id. 511; Fisher
 
 v.
 
 Horicon Iron Go., 10 Id. 353 ; Newell v. Smith, 15 Id. 104; Goodall
 
 v.
 
 City of Milwaukee, 5 Id. 39; Weeks
 
 v.
 
 City of Milwaukee, 10 Id. 242.
 

 †
 

 16 Wisconsin, 248.