**COATES et al. v. UNITED STATES.**

No. 49684.

United States Court of Claims

Nov. 7, 1950.

B. Sherman Landau, St. Louis, Mo., for the plaintiff. Miller & Landau, St. Louis, Mo., were on the brief.

Floyd L. France, Washington, D. C., with whom was Asst. Atty. Gen. A. Devitt Vanech, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiffs' petition alleges that the defendant in the course of improving the navigability of the Missouri River in the area between Kansas City and St. Louis, Missouri, built certain structures and made improvements, the effect of which was, from the year 1945 on, to change the character, course, and rate of flow of the river in such a way as to cause erosion of plaintiffs' farm land and deposit thereon of a heavy layer of sand which resulted in permanent destruction of the productivity of the land. The plaintiffs ask damages in the amount of $179,540.04. Of this sum, $82,040.04 is claimed to represent damages from destruction of plaintiffs' crops, and $97,500.00 is alleged to represent the reduction in value of plaintiffs' farm.

The defendant has demurred to the petition on two grounds as follows: (1) The petition fails to state facts sufficient to constitute a cause of action, and (2) if the facts alleged in the petition give rise to an action in tort, this Court is without jurisdiction. Either of these grounds, if established, would be enough to sustain the demurrer.

At the outset, it should be noted that in argument and on the briefs, the plaintiffs' view of the issue differs materially from defendant's. The defendant states that the United States is not liable to a riparian owner for damages caused by a change in the character, course, and rate of flow of the waters of a navigable stream resulting from structures lawfully constructed in aid of navigation where there is no direct invasion of a plaintiff's property. Defendant contends that there is in this case no direct invasion by defendant of plaintiffs' property, that its work was not unauthorized or negligent, that it is not contended by plaintiffs that the damage suffered was a direct and necessary result of the work of defendant and that if the plaintiff suffered any damage it was of an indirect and consequential character. Defendant states, and supports its contention with numerous citations, that indirect and consequential damages resulting to a riparian owner from improvements to navigation placed in a navigable river by the United States do not constitute a taking of private property for a public purpose with an implied promise to pay just compensation under the Fifth Amendment to the Constitution.

The view of the plaintiffs, on the other hand, is that no indirect or consequential damage was suffered but that, quite the opposite, the defendant's actions raised the Missouri River above its ordinary highwater mark and directly caused the destruction and removal of top soil and the deposit of sand which permanently destroyed the land for agricultural use. On these conflicting premises, the parties predicate their contrary conclusions as to the right of plaintiffs to maintain this action as a matter of law.

We can conceive of a no more direct invasion of a man's property than the alleged deposit upon it of several hundred thousand tons of sand as a direct consequence of work being done to the adjacent stream. The pilings may not have been driven upon the plaintiffs' land but the pilings and other mechanical work done caused the sand to be thrown there. A boy may throw a baseball across the street through his neighbor's window. The ball breaks the glass but it cannot be denied that the boy who threw it was the real culprit and the direct cause of the broken window. If the plaintiffs can prove that they suffered permanent damage directly from the activities of the defendant, as contended, it seems to us that they will have made a case. In Pumpelly v. Green Bay & Mississippi Canal Co., 13 Wall. 166, 80 U.S. 166, 181, 20 L.Ed. 557, the Supreme Court said "* * * it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually de-

stroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle."

The defendant relies, in part, upon the case of Gibson v. United States, 29 Ct.Cl. 18, affirmed 166 U.S. 269, 17 S.Ct. 578, 41 L.Ed. 996. In that case the plaintiff owned land along the Ohio River and had a landing from which she shipped her produce and received her supplies. The United States, in aid of navigation, built a dike which diverted the water away from plaintiff's landing and rendered it useless, except during high water. The owner alleged a taking of her property for public purposes. This Court held that the United States was not liable because it was acting under a right it possessed to improve the river in aid of navigation and no taking of private property with an implied promise to pay just compensation resulted. The Supreme Court in affirming the opinion of this court held that riparian ownership is subject to the obligation to suffer the consequences of the improvement of navigation in the exercise of the dominant right of the Government in that regard. Further, that the damage resulting from the prosecution of improvements in a navigable highway, for the public good, was not the result of a taking of property and was merely incidental to the exercise of a servitude to which the property had always been subject. This Court and the Supreme Court found, however, that: "There was no water thrown back on claimant's claim by the building of said dike, and that said dike has not itself come into physical contact with claimant's land,

and has not been the cause of any such physical contact in any other way."

In the instant case a different situation obtains for here water was thrown back on the land, allegedly removing the top soil and depositing thereon a huge amount of sand, ranging in depth up to five feet. Likewise, the case of Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414, is also distinguishable upon the facts. In the factual situation back of the Bedford case an effort was made by the defendant to hold the Mississippi River in status quo at the vicinity of Vicksburg. Success in so doing caused the flooding of plaintiff's land. No liability was found, the Court relying upon the Gibson case. In the instant matter, the effect of the defendant's acts was not to maintain the status quo of the river but, quite the contrary, was to supplant natural conditions by forcing it allegedly to shift its current out of its natural bed, increasing its flow over bottom lands progressively to the point of their permanent destruction. If these facts can be established by the evidence and if it can be shown that the activities of the defendant directly and necessarily resulted in the alleged permanent destruction of the plaintiffs' land, then plaintiff would be entitled to recover for an invasion of a permanent and continuous character constituting a taking of private property for a public purpose for which there is an implied promise to pay just compensation as required by the Fifth Amendment. Pumpelly v. Green Bay & Mississippi Canal Co., supra; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539;[1] United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746;[2] and

1. United States v. Chicago, M., St. P. & P. R. Co., 312 U.S. 592, 61 S.Ct. 772, 85 L. Ed. 1064, limits the decisions in the Lynah and Cress cases so that they do not conflict with the government's dominant servitude when it is applied to the bed of a navigable stream. The Supreme Court, however, expressly mentions the Lynah case as an authority on the point that the flooding of land, as there done, where seepage and flooding turned the land into a bog, amounted to a compensable taking of it.

2. In the Cress case, after discussing and approving the reasoning in the Pumpelly and Lynah cases, the Supreme Court said:

"There is no difference of kind, but only of degree, between a permanent condition of continual overflow by backwater and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other. If any substantial enjoyment of the land still remains to the owner, it may

Leovy v. United States, 177 U.S. 621, 20 S.Ct. 797, 44 L.Ed. 914.

We attach no value to the obligue suggestion that this case may sound in tort and thus not be within our jurisdiction. Clearly, if this is a tort claim we would not have jurisdiction of it *per se*, but defendant does not assert that it is such a claim. The

claim is of the character of a taking and should be heard on its merits. The demurrer is overruled.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

be treated as a partial instead of a total divesting of his property in the land. The taking by condemnation of an interest less than the fee is familiar in the law of eminent domain." 243 U.S. at pages 328–329, 37 S.Ct. at page 385.

See also, for analysis of these cases as pertaining to riparian rights, United States v. Kansas City Life Insurance Company, 339 U.S. 799, 70 S.Ct. 885, affirming 74 F.Supp. 653, 109 Ct.Cl. 555.