**NBH LAND COMPANY d/b/a Ingersoll Republic Corp., et al.**

v.

**The UNITED STATES.**

No. 332–75.

United States Court of Claims.

May 17, 1978.

David D. Dominick, Denver, Colo., attorney of record for plaintiff; Cogswell, Chilson, Dominick & Whitelaw, Denver, Colo., of counsel.

Hank Meshorer, Denver, Colo., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant.

Before DAVIS, NICHOLS, and KASHIWA, JJ.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge, delivered the opinion of the court:

This case is before the court on defendant's motion for summary judgment. It is a taking case, i. e., a claim "founded on the Constitution" under the Tucker Act, as it now is, 28 U.S.C. § 1491. The decisive question is whether the actions of defendant's officials constituted takings by the United States under the law of eminent domain. We hold that they did not.

A full list of the plaintiffs runs to four pages. They are corporations, fiduciaries, and individuals who own or did own land between Colorado Springs and Pueblo, Colorado, bordering the east boundary of the Fort Carson Military Reservation. This is controlled by the United States Army and is the home of the Fourth Infantry Division (mechanized). It covers approximately 137,000 acres. At some unstated date, responsible officers at Fort Carson formed the idea that the Reservation should be expanded to include the plaintiffs' land. Proposals were put before Congress in connection with the fiscal 1975 Military Construction request, asking for authority and funds to acquire the said land. Congress rejected the proposals, as it did a scaled down project for fiscal 1976. Congress has never given affirmative support or recognition of any sort to this project; its only actions have been the negative ones stated. Since fiscal 1976, no proposal in the premises has been before Congress.

While the proposed expansion was under active consideration, military officers divulged the scheme to local interests, causing many persons, of course, to do what otherwise they would not have done, respecting the land, and others not to do what they would have done. There was a project for private subdivision and development of the area, in connection with which zoning changes were sought. Army officers appeared in opposition to these, and they were defeated. We can assume, for purposes of the instant motion, that these events, with ultimate collapse of the base expansion project, were accompanied by pecuniary losses to some persons. The plaintiffs also say the Army conducted what they call a "lobbying campaign" to influence public opinion against the development plans, and told one or more plaintiffs they should not proceed with their plans because the Army would take or acquire the property. Plaintiffs expect to be able to show that the Army's entire course of conduct destroyed the marketability of the property and constituted a taking under the fifth amendment.

Under date of March 23, 1977, a panel of this court handed down *De-Tom Enterprises, Inc. v. United States*, 552 F.2d 337, 213 Ct.Cl. 362. It seems to have thereby inspired the trial judge and the defendant to

ask if this case could not be disposed of on summary judgment. The plaintiffs there were owners adjacent to an Air Force Base, who desired to develop their land for residential purposes, and needed a change in the applicable zoning to carry out their plans. The Air Force successfully opposed the change, not because they intended to acquire the land for the base, but because they feared an increase in the nearby population would occasion complaints against the noise of the military aircraft, and possible interference with their operation. The panel, affirming a trial judge's adverse report on the claim, put its decision on the broad ground that inducing a state regulatory body to take action, lawful so far as appeared, under state law, or refuse such action, likewise lawfully, could not constitute a taking by the United States.

■ Despite the difference in motive on the part of the military officers who appeared in the zoning proceedings here involved, that holding does appear indeed to strike a body blow at our plaintiffs' case. Plaintiffs' counsel, however, relying on such cases as *Washington Market Enterprises, Inc. v. City of Trenton*, 68 N.J. 107, 343 A.2d 408 (1975), says he can leave out these appearances by officers, and still state a valid taking claim. As a matter of fact, use and exploitation of local zoning along with other acts and omissions, can make up a combination that, all taken together, effectively deprives the owner of the benefit and use of his property, and constitutes a taking. *Drakes Bay Land Co. v. United States*, 424 F.2d 574, 191 Ct.Cl. 389 (1970); compare *Foster v. City of Detroit*, 254 F.Supp. 655 (E.D.Mich.1966), aff'd, 405 F.2d 138 (6th Cir. 1968). The trouble is that such other factors are as lacking here, as in *De-Tom*. Take the zoning appearances out of the case, and what else do plaintiffs have in their case as stated by themselves? That the military notified the local people of their plan, and urged that the local plans conform. If we are to have the kind of open society we all wish to inhabit, what is wrong with that? Should the military have kept their plans secret, obtained the necessary authorization, and sprung it on the local people as a bolt from the blue, there would have been a valid ground of complaint. Mere candor by public officials about their plans has never been held to constitute a taking. Even "a threat of condemnation is not a taking * * *." *Hempstead Warehouse Corp. v. United States*, 98 F.Supp. 572, 573, 120 Ct.Cl. 291, 306 (1951), and cases cited. Anyone with experience in public affairs knows the weight to attach to mere jawboning.

■ Cases of "inverse" takings without physical invasion or ouster are not very numerous, and when they occur, as in *Drakes Bay, supra*, and in the more recent *Benenson v. United States*, 548 F.2d 939, 212 Ct.Cl. 375 (1977), this court has been careful to consider the role of Congress, and the taking, if not expressly authorized or directed by Congress, at least is a natural consequence of Congressionally approved measures. In *Pete v. United States*, 531 F.2d 1018, 209 Ct.Cl. 270 (1976), the taking was in the good faith implementation of a Congressional Act, 16 U.S.C. § 1131. To reach the result of those cases here, in a case when the only participation by Congress has been to reject the acquisition out of hand, would strike a blow at the power of the purse. The exclusive assignment of that power to Congress is the foundation of our liberties. It was an express assumption in *Drakes Bay*, and implied in *Benenson* and *Pete* that Congress hoped its measures would not transgress the line drawn by the fifth amendment, but was presumably aware, if they did, they would generate money claims under the Tucker Act. Such an awareness cannot be imputed to Congress when its only connection with a proposed land acquisition has been to reject it. This kind of analysis assures that, in enacting the then new provision of the Tucker Act, Act of March 3, 1887, 24 Stat. 505, that authorized suits founded on the fifth amendment, Congress did not strip itself of all control over the obligation of public funds by land takings without condemnation. Thus a Tucker Act suit does not lie for an executive taking not authorized by Congress, expressly or by implication.

*Hooe v. United States,* 218 U.S. 322, 335, 31 S.Ct. 85, 54 L.Ed. 1055 (1910). The soundness of this holding has been recently reaffirmed, *Regional Rail Reorganization Act Cases,* 419 U.S. 102, n. 16, 127, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).

Plaintiffs' claim seems to be for the full value of the land as a fee simple absolute. Possibly it could be curtailed to a temporary interest of some kind, or an option, thus somewhat diminishing the outrage to the power of the purse, but allowance would still, we believe, be wrong in legal principle.

Accordingly, on defendant's motion for summary judgment and plaintiffs' opposition thereto, and the briefs of the parties, but without oral argument, defendant's motion for summary judgment is granted and plaintiffs' petition is dismissed.