**Richard V. BETTINI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 445–83L.**

United States Claims Court.

March 8, 1984.

Order March 22, 1984.

Barbara R. Banke, San Francisco, Cal., for plaintiff. Jess S. Jackson, P.C., and Burton J. Goldstein and M. Reed Hunter, Goldstein, Barceloux & Goldstein, San Francisco, Cal., of counsel.

Pauline H. Milius, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant. James G. Becker, Dept. of the Interior, San Francisco, Cal., of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss pursuant to RUSCC 12(b)(1), (4) on the grounds that subject matter jurisdiction is lacking and that the complaint fails to state a claim for which relief can be granted. The parties declined oral argument.

## FACTS

For purposes of a motion under RUSCC 12(b)(4), all facts alleged by plaintiff will be regarded as established, *Adams v. United States,* 3 Cl.Ct. 696, 697 (1983) (NETTESHEIM, J.), a presumption that does not apply to the analytically distinct motion asserting lack of subject matter jurisdiction under RUSCC 12(b)(1). *Nguyen v. United States Catholic Conference,* 548 F.Supp. 1333, 1336 (W.D.Pa.1982). The existence of jurisdiction to hear plaintiff's claim turns on whether the complaint sets forth a claim for a taking by inverse condemnation or sounds in tort.

This case arose out of the collapse of a federally owned road onto and across property in which plaintiff claims ownership. Plaintiff's land is located in Marin County, California, adjacent to the Point Reyes National Seashore Park (the "Park"). Defendant designed, constructed, and maintained a highway known as Limantour Road which runs from Point Reyes through the Park and at one point lies adjacent to plaintiff's unimproved property (the "property"). In early March 1983, a 50-to-60 foot section of Limantour Road collapsed, causing a slide of mud, rocks, and highway materials to flow over the property. Plaintiff claims that as a result of this landslide his property was damaged totally. According to plaintiff,

> This disaster and its consequences are directly attributable to, and were caused by, the acts and omissions of the defendant United States in its design, construction, maintenance and operation of Limantour Road and its related works, and the changes in the configuration of the terrain caused by the road and its supporting structures.

## DISCUSSION

Plaintiff alleges that defendant is liable for the damage to his property because, through the acts and omissions charged, defendant has taken the property without payment of just compensation. Plaintiff further alleges that the public generally benefits from Limantour Road and the Park and that, if not compensated for his loss, plaintiff would be forced to bear a "disproportionate share of the burdens generated by the plan, design, construction, operation and maintenance of that road for the public benefit and use." Plaintiff, however, does not assert that the landslide collapse of Limantour Road created a benefit for the public at large.

Defendant claims that in addition to the 1983 landslide—the only one identified in plaintiff's complaint—there were landslides on the property in 1982, which already had altered the terrain and vegetation. Plaintiff in his opposition to defendant's motion takes the position that defendant is responsible for damage caused by slides in January 1982, which defendant denies, although whether these alleged slides were the same ones that defendant implies were strictly intra-premises occurrences is unclear.

### 1. *Jurisdiction*

Defendant argues that this court lacks jurisdiction over a claim arising from the "unanticipated and unauthorized consequences of the construction of Limantour Road." Authorities are cited for the proposition that the United States Claims Court does not have jurisdiction over tort actions or suits based on the "accidental or negligent impairment of property." *E.g., De-Tom Enterprises, Inc. v. United States,* 213 Ct.Cl. 362, 371, 552 F.2d 337, 339 (1977); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1010 (1967); *Columbia Basin Orchard v. United States,* 132 Ct.Cl. 445, 452, 132 F.Supp. 707, 710 (1955). To the extent that plaintiff's claim is based on a tort

theory, defendant is correct. Defendant's characterization of its actions as tortious, however, is not determinative of the nature of the invasion. *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (COLAIANNI, J.), *aff'd mem.*, 723 F.2d 68 (Fed.Cir.1983) (per curiam). As the following discussion shows, plaintiff's claim is not exclusively tort based, and this court therefore has jurisdiction over the non-tort aspect of plaintiff's claim.

### 2. *Permanent or Inevitably Recurring Invasion of Plaintiff's Property*

■ The first issue is whether the extent of the alleged invasion of plaintiff's rights in the property rises to the level at which compensation is required. Defendant argues that an element of plaintiff's proof is a showing that the damage to the property is either permanent or inevitably recurring. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). As framed in *National By-Products, Inc. v. United States*, 186 Ct.Cl. 546, 577, 405 F.2d 1256, 1273–74 (1969), the issue is "whether the injury to the claimant's property is in the nature of a tortious invasion of his rights [which is not compensable] or rises to the magnitude of an appropriation of some interest in his property permanently to the use of the Government," which is compensable. Defendant posits that the one-time slump of dirt across the property is the same kind of occurrence as that involved in cases denying liability for one-time or rare occurrences of flooding. Because the road has already collapsed, defendant would say, it cannot collapse again. *See, e.g., Wilfong v. United States*, 202 Ct.Cl. 616, 621, 480 F.2d 1326, 1329 (1973) (aircraft overflights which were not frequent or severe enough to impose permanent consequences on property analogized to occasional flood cases); *Fromme v. United States*, 188 Ct.Cl. 1112, 1119, 412 F.2d 1192, 1197 (1969) (one-time flood with possible 15-year

recurrence not sufficient to create an easement for Government).

Plaintiff meets these assertions by noting that although flooding waters will recede, a slag of earth will not.[1] Plaintiff contends further that any interference with property rights can, if large enough, rise to the level at which compensation is required. Thus, even temporary takings can require compensation. *See, e.g., Kimball Laundry Co. v. United States*, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949) (taking of a laundry for four years); *McKeon v. New York, N.H. & H.R.R.*, 75 Conn. 343, 53 A. 656 (1902) (temporary taking of access to private dwellings by the laying of railway tracks in street while building elevated tracks). Based on the facts alleged in the complaint, plaintiff has stated a claim for a permanent or compensable temporary taking of his property.

### 3. *Authorization and Intent*

■ Defendant argues that in order to recover plaintiff must prove an intentional and direct act by the Government which had the natural and probable consequence of taking the property. *See Bedford v. United States*, 192 U.S. 217, 224, 24 S.Ct. 238, 240, 48 L.Ed. 414 (1904) (distinguishing between damage to property and a taking of property); *Barnes v. United States*, 210 Ct.Cl. 467, 476, 538 F.2d 865, 871 (1976) (showing of specific intent to take property not required, rather a governmental act with the natural and probable effect of constituting an enduring invasion of subject property). A related concept is that the action must have been authorized by Congress. *Southern California Financial Corp. v. United States*, 225 Ct.Cl. 104, 108, 634 F.2d 521, 523 (1980), *cert. denied*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981) (congressional authorization required, but may be express or implied). According to defendant, "By no stretch of the imagination can it be said that Congress in effect impliedly authorized the tak-

---

**1.** Defendant suggests that plaintiff could move the deposit, but plaintiff argues that the cost of

removal will exceed the value of the property.

ing by a mud slide of Bettini's property ... as a part of the construction ... of the Limantour Road ...." For the requirement of congressional authorization to be met, however, it is not necessary for Congress to approve the taking itself. Congressional authorization may be implied if the taking is a natural consequence of congressionally approved measures or occurs in the good faith implementation of a congressional act. *NBH Land Co. v. United States*, 217 Ct.Cl. 41, 44, 576 F.2d 317, 319 (1978). In fact, takings resulting from mistaken acts of government officials acting within the scope of their authority are not unauthorized. *Eyherabide v. United States*, 170 Ct.Cl. 598, 606, 345 F.2d 565, 570 (1965). Even though "there may be no official intention to acquire any property interest, certain governmental actions entail such an actual invasion of private property rights that a constitutional taking must be implied." 170 Ct.Cl. at 601, 345 F.2d at 567.

Defendant argues, however, that a road collapse, such as that occurring on Limantour Road, can never be the intended consequence of building a road nor a natural consequence of such a construction.

█ Plaintiff in response attempts to broaden the scope of compensable takings from those directly caused by a public work as "natural consequences" of the work to those "proximately caused" by a public work. Plaintiff cites to California law, under which if a public improvement proximately causes, *i.e.*, is a substantial cause of, damage to private property and if the public improvement was built and maintained as planned and designed, liability can exist without regard to whether the damage was a "natural consequence" or foreseeable result of the project. *See, e.g., Albers v. County of Los Angeles*, 62 Cal.2d 250, 42 Cal.Rptr. 89, 97, 398 P.2d 129, 137 (1965) (landslide proximately caused by construction of highway); *Yee v. City of Sausalito*, 141 Cal.App.3d 917, 921, 190 Cal. Rptr. 595, 597 (1983) (subsidence proximately caused by sewer leaking into plaintiff's land).

Federal law, in contrast, provides a stricter standard. The fifth amendment to the United States Constitution reads in part: "[N]or shall private property be taken for public use, without just compensation." The California Constitution, art. I, § 14 provides that "[p]rivate property shall not be taken *or damaged* for public use without just compensation ...." (Emphasis added.) The underscored phrase "or damaged"—not present in the United States Constitution—seems to narrow the types of damage that are noncompensable because they are regarded as not foreseeable and hence consequential. *Cf.* Van Alystyne, *Inverse Condemnation: Unintended Physical Damage*, 20 Hastings L.J. 431, 439–40 (1969). Plaintiff cites not a single case under the fifth amendment holding the United States liable other than for the natural, direct, and foreseeable results of the Government's actions.

Plaintiff relies on many cases to prove that earth movements caused by the Government amount to a taking in the constitutional sense. None of these cases is a landslide case. *Coates v. United States*, 117 Ct.Cl. 795, 93 F.Supp. 637 (1950), plaintiff's best case, involved the deposit of sand, but that deposit was the direct and foreseeable result of improvements the United States made on a river causing an overwash onto plaintiff's property. Although in this case, the possibility exists of building a road without having it collapse, in *Coates* the improvements could not be made without causing the overwash. *Woodruff v. North Bloomfield Gravel Mining Co.*, 18 F. 753 (C.C.D.Cal.1884), involved problems resulting from the intentional dumping of mining debris into a river. *Horn v. Chicago*, 403 Ill. 549, 87 N.E.2d 642 (1949), is neither a federal law case nor a dirtslide case. In *Horn* retaining walls were built on the approaches to a bridge thus limiting access to plaintiff's property. The interference was a direct effect of the construction proceeding as planned. "[I]f as a *necessary* result of the construction, maintenance, or operation of a public improvement," the property is in-

undated with debris, then there is a taking. 87 N.E.2d at 646 (emphasis added).

Plaintiff also cites *Pumpelly v. Green Bay Co.*, 80 U.S. (13 Wall.) 166, 181, 20 L.Ed. 557 (1872), for the proposition that inundation of debris is a taking. *Pumpelly* involved the creation of a dam which caused an overflow on plaintiff's land. The overflow remained continuously from the completion of the dam in the year 1861 to the commencement of suit in 1867. Thus, *Pumpelly* illustrates a taking by the direct, natural consequence of a government improvement, in contrast to a tort case like *Hayward v. United States*, 30 Ct.Cl. 219 (1895). In *Hayward* a dam was constructed by the Government which collapsed and caused a washout of land belonging to the plaintiff. The court stated that if faulty construction of the dam caused the dam to break, "the damages would be the result of the fault of the defendants, and an action for such damages would 'sound in tort' and come within the inhibited jurisdiction of the court." 30 Ct.Cl. at 221.

■ Although the instant case bears a closer resemblance to *Hayward* than to *Pumpelly*, defendant's argument that a road collapse is never an intended consequence of building a road, thereby suggesting that a road collapse is never a "natural consequence" of road construction within the meaning of the cases, is without merit. It is not necessary that the damage be a collateral effect within the contemplation of the officials responsible for a government project. A taking may be found not only where the extent of damage caused by governmental activity exceeds the bounds of the taking anticipated for the project, *King v. United States*, 192 Ct.Cl. 548, 427 F.2d 767 (1970), but even where the Government has taken pains to prevent

damage. *Berenholz v. United States*, 1 Cl.Ct. at 627.

A taking took place in *Berenholz* wherein the Army Corps of Engineers, having breached claimant's dike to allow access for one of its barges engaged in repair operations, repaired the breach, but the rebuilt segment eroded resulting in the erosion of the rest of the dike, as well. The inquiry is not whether the result was intended nor whether it occurred despite the efforts of the Government to prevent the damage, but whether it was the probable or foreseeable consequence of a deliberate governmental act. 1 Cl.Ct. at 628. "The likelihood of the outcome serves to distinguish conduct which is a taking from that which is tortious. *Id.* "[T]he legal characterization of the loss will depend on how direct a product of the actual interference the injury is." *Id.* at 626–27 (citing *United States v. Causby*, 328 U.S. 256, 265–66, 66 S.Ct. 1062, 1067–1068, 90 L.Ed. 1206 (1946)). The court in *Berenholz* found that the unlikelihood of restoring the dike to its previous condition was suggested by "common sense." 1 Cl.Ct. at 628. On the other hand, where there is " 'a random event induced more by an extraordinary natural phenomenon than by Government interference' there can be no taking, even if there is permanent damage to property partially attributable to Government activity." *Id.* at 626 (quoting *Wilfong v. United States*, 202 Ct.Cl. 616, 622, 480 F.2d 1326, 1329).

■ In *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887 (Fed.Cir.1983), the Federal Circuit struck out vigorously against precipitous grants of summary judgment in inverse condemnation cases, which it considers to involve questions of fact. Consistent with the admonition of *Yuba Goldfields*, few of the cases relied on by defendant denied recovery on dispositive pretrial motions.[2] If plaintiff can show

---

**2.** *NBH Land Co. v. United States*, 217 Ct.Cl. 41, 576 F.2d 317 (actions by Army officers inhibiting private development of certain land did not give rise to a taking where Congress failed to authorize condemnation project because of lack of authority to do the acts); *Barnes v. United States*, 210 Ct.Cl. 467, 538 F.2d 865 (on stipulated facts; raising of water level and seepage

were natural consequence of government dam; in the case at bar, facts concerning the alleged inevitability of the road collapse are not stipulated); *Hartwig v. United States*, 202 Ct.Cl. 801, 485 F.2d 615 (1973) (on motion for summary judgment; no allegation of permanent or inevitably recurring invasion and no affidavit to that effect; the court here has found that an inva-

that the direct, foreseeable, and almost inevitable consequence of the construction of Limantour Road would be collapse of the road or the slide of material onto plaintiff's property, then recovery based on inverse condemnation may be had. It is within the realm of factual possibility that the particular location involved here was such that a mudslide was a clearly foreseeable and probable result of constructing a road, or that the construction which took place was bound to collapse. Despite defendant's assertion that a road collapse is never the "natural consequence" of a highway project, the facts may prove otherwise.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied.

■ Although plaintiff's complaint states a claim for relief within the jurisdiction of this court, that cause of action is much narrower than plaintiff intended. Consequently, the court has determined that liability shall be determined separately pursuant to RUSCC 42(c).

IT IS SO ORDERED.

## ORDER

Defendant has moved for reconsideration of the opinion entered on March 8, 1984, denying defendant's motion to dismiss. Defendant asserts, *inter alia*, that

the court has made a fundamental error of law which obliterates the recognized distinction in the law between inverse taking, over which this court has jurisdiction, and a tort, over which it does not. The effect of the court's ruling is to give this court jurisdiction of any claim of substantial harm to a claimant's property resulting from the alleged failure of a government project due to negligent design, construction, or operation ....

Defendant asserts: "In the case at hand, no 'taking' can have occurred because the only way the construction of the Limantour Road can have caused the road collapse is if such construction was done negligently, *i.e.*, was a 'negligent act.'" In essence defendant posits that, under the formulation articulated in the court's opinion, plaintiff is allowed to establish a taking caused by negligent acts, such as negligent design or construction without regard to whether the result was a natural, direct, and foreseeable result of a deliberate government act. The court's opinion is not reasonably susceptible of the strained reading defendant would give it. The March 8 opinion reaffirmed the court's lack of jurisdiction to entertain a taking grounded on a negligence theory and bifurcated trial because plaintiff could only proceed on a claim narrower than that intended, *i.e.*, plaintiff could not offer proof of mere negligence.

■ Post-opinion motions seeking reconsideration are disfavored, especially when, as here, a party has had ample opportunity to brief and argue the point in issue. *See Prestex, Inc. v. United States*, 4 Cl.Ct. 317 (1984) (order denying motion to reconsider) (LYDON, J.). Although in denying defendant's motion to dismiss the court relied heavily on the *Berenholz* Claims Court case cited by neither party, the case was decided in 1982, had been reported, was affirmed on appeal, was the most recent and comprehensive statement of the rule that in an inverse condemnation case "the question of taking ... [is] one which must be decided on the particular facts of each case ...." 1 Cl.Ct. 626 (citation omitted), and is not, as defendant argues, "readily distinguishable." For example, the " 'common sense' " by which the judge in *Berenholz* found that the natural result of a governmental act amounted to a taking was exercised only after trial. In contrast, defendant's reconsideration motion, like its

sion, which was pleaded, has occurred); *Coates v. United States*, 117 Ct.Cl. 795, 93 F.Supp. 637 (Government's demurrer overruled; claim stated and plaintiff allowed to proceed to prove natural consequence of construction); *PDTC Owners Assoc. v. Coachella Valley County Water*

*District*, 443 F.Supp. 338 (C.D.Cal.1978) (damage to land which was to have been protected by improvements cannot be the basis of suit where protection fails; complaint dismissed for failure to state claim after evidentiary hearing on issues of danger of recurrent, intermittent flooding).

motion to dismiss, asserts without any factual support as an incontrovertible or undeniable factual proposition that the natural, direct, and foreseeable consequence of constructing a road can never be to cause a mudslide or the road's collapse, but that negligence can be the sole cause.

If through discovery defendant ascertains that plaintiff's proof is causation due to mere negligence, a motion for summary judgment should be filed. More appropriately, plaintiff should seek voluntary dismissal. If at trial plaintiff puts on a negligence case, defendant can move for a directed verdict. However, defendant cannot achieve on a motion to dismiss for failure to state a claim (which if well taken would result in a want of jurisdiction) the same result that could only be proper if defendant offers factual support to justify it.

■ At this early point in the case, plaintiff has stated the claim, not sounding in negligence, that the natural, direct, and foreseeable consequence of constructing the road was a mudslide or collapse of the road. Once the likelihood of the result is or should be manifest, the conduct becomes a taking, not a tort. *Berenholz v. United States*, 1 Cl.Ct. 620, 628, *aff'd mem.*, 723 F.2d 68 (Fed.Cir.1983) (per curiam).* For example, defendant may have considered a collapse or mudslide to be a probable result of constructing the road, but risked construction anyway. Another approach, as defendant itself speculates, is that plaintiff might present a taking claim by "demonstrating that the government had deliberately removed or weakened the road's foundation, perhaps, for example, by removing gravel or other material which supports the road, in order to use it to confer an authorized public benefit elsewhere." Plaintiff would not even need to show that the gravel was removed for the purpose of creating a public benefit "elsewhere." That the material was removed in order to create the road itself would suffice.

The March 8 opinion denying defendant's motion to dismiss did no violence to the Claims Court's jurisdiction.

Based on the foregoing,

IT IS ORDERED, as follows:

Defendant's motion for reconsideration is denied.

---

* There is nothing in the March 8 opinion that would encourage this or any other plaintiff to file a claim for a taking based on negligent maintenance or operation of a road.