**Fred W. POORBAUGH and Ruth E. Poorbaugh, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1457 L.**

United States Court of Federal Claims.

Feb. 9, 1993.

Martin E. Threet, Albuquerque, NM, for plaintiffs.

Margaret M. Sweeney, Washington, DC, with whom was Acting Asst. Atty. Gen. Vicki A. O'Meara, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss, or in the alternative, for summary judgment. Plaintiffs alleged that defendant's negligent actions caused injury to and loss of their property and constituted a taking of their property. Defendant challenged plaintiffs' complaint based on a lack of subject matter jurisdiction and failure to state a claim.

## I. Facts

Plaintiffs, Fred W. Poorbaugh and Ruth E. Poorbaugh, are the owners[1] of a twenty acre tract of land situated within and surrounded by the Carson National Forest in Rio Arriba County, New Mexico.[2] This tract was initially part of an 160 acre tract purchased by plaintiff, Fred W. Poorbaugh, in 1975. In 1977, defendant, through the United States Forest Service, purchased 140 of the original 160 acre tract under authority of the Act of August 3, 1956, 7 U.S.C. § 428a, leaving the remaining twenty acres at issue. After acquiring the 140 Acres, defendant incorporated the land into the San Antone Grazing Allotment which had been used for the grazing of privately owned cattle under Forest Service permits for over fifty years. Throughout plaintiffs' ownership of the parcel at issue, defendant has maintained the road which provides access to plaintiffs' property and other private owners within the National Forest. The road has been infrequently blocked during these periods of maintenance.

Shortly after defendant acquired the land in 1977, the Forest Service published an offroad recreational vehicle map which inadvertently identified the subject property as part of the National Forest. In 1986, the Forest Service published a travel guide and map which also inadvertently identified the property as National Forest land. Both of these maps were small scale maps made for the purpose of general illustration of National Forest features and general directional guidance.[3] The official land status plat and tabular record have at all times identified plaintiffs' land as private.

In the mid–1980s plaintiffs began to experience problems with vandalism by trespassers and depredations caused by livestock coming onto their land and met with Forest Service officials to discuss the problem. Thereafter, the Forest Service erected a fence around plaintiffs' property, but due to insufficient surveys for the entire property, approximated the boundary line for a portion of the property using the common subdivisional corners of adjacent property which were established by official survey.[4] To facilitate the fence construction, defendants cleared all trees along the fence line.

In 1991, plaintiffs filed a complaint alleging two causes of action. Count one of plaintiffs' complaint alleged that defendant negligently published maps indicating public ownership of plaintiffs' property, and encouraged or allowed grazing permit holders to use plaintiffs' land for grazing and access to other parts of the grazing district, thereby causing damage to plaintiffs' property for which they were entitled to compensation. Count two of plaintiffs' complaint contended that defendant's allegedly negligent actions in constructing the fence constituted a taking of both that portion of their property allegedly outside the fence line and the trees cut to construct it. Defendant responded by filing this motion contending that defendant's allegedly negligent acts (1) are beyond the subject matter jurisdiction of this court; or (2) if properly before the court, do not state a claim for which relief can be granted. In response to defendant's motion, plaintiffs also alleged that the Forest Service restricted their access to the property and

---

1. Defendant contended that Ruth E. Poorbaugh did not own the property at the time of the alleged taking and therefore was not a proper plaintiff. Because the court finds that plaintiffs do not state a claim within the jurisdiction of this court for which relief can be granted, it does not address this issue.

2. It is clear on its face that the legal description of the land included in plaintiffs' complaint is incorrect. However, it is undisputed that at least one of the plaintiffs owns a 20 acre parcel within the Carson National Forest.

3. The 1/16 by 1/8 inch spot which identified plaintiffs' property on the maps was outlined, but inadvertently colored the same color as the surrounding National Forest land. The error was corrected in the first printing after the discrepancy was brought to light.

4. Plaintiffs asserted that a "portion" of the fence line encroached on their property by twenty-five feet. Defendant maintained, through proper affidavit, that the approximated fence line was accurate.

that defendant's actions were a breach of an implied contract.[5]

## II. DISCUSSION

 In determining whether to dismiss a case for lack of jurisdiction over the subject matter, the court must accept as true any undisputed allegations of fact made by plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *National Sur. Corp. v. United States*, 20 Cl.Ct. 407, 409 (1990). Plaintiffs carry the burden of proving jurisdiction by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). Plaintiffs based their jurisdictional claim on section 1491(a)(1) of the Tucker Act, 28 U.S.C. §§ 1491–1509, which reads, in pertinent part: "The United States [Court of Federal Claims] shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress ... *not sounding in tort.*" 28 U.S.C.A. § 1491(a)(1) (Supp.1992) (emphasis added).

 On its face, count one of plaintiffs' complaint, damages for defendant's alleged negligence, is outside the court's jurisdiction. However, count two of plaintiffs' complaint seeks relief based upon the Fifth Amendment for the alleged "taking" of plaintiffs' property. The existence of jurisdiction to hear plaintiffs' "takings" claim turns on whether the complaint sets forth a claim for a taking by inverse condemnation or sounds in tort. There is no question that the court has jurisdiction over legitimate claims brought under the takings clause of the Fifth Amendment. "[T]he issue is 'whether the injury to the claimant's property is in the nature of a tortious invasion of his rights [which is not compensable] or rises to the magnitude of an appropriation of some interest in his property ...,' which is compensable." *Bettini v. United States*, 4 Cl.Ct. 755, 758 (1984) (quoting *National By–Products, Inc. v. United States*, 405 F.2d 1256, 1273–74, 186 Ct.Cl. 546 (1969)).

 Defendant argued that the United States Court of Federal Claims does not have jurisdiction over tort actions or suits based on the accidental or negligent impairment of property. *See, e.g., De–Tom Enter., Inc. v. United States*, 552 F.2d 337, 339, 213 Ct.Cl. 362 (1977); *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1010, 178 Ct.Cl. 599 (1967). To the extent that plaintiffs' takings claim is based on tort theory, defendant is correct. However, defendant's characterization of plaintiffs' takings claim as a negligence action sounding in tort is not determinative of the nature of the invasion. *Bettini*, 4 Cl.Ct. at 758; *Berenholz v. United States*, 1 Cl.Ct. 620, 626 (1982), *aff'd*, 723 F.2d 68 (Fed.Cir. 1983). Although not clearly articulated in their complaint, it appears that plaintiffs believe that the government's allegedly negligent actions so substantially impaired their property as to amount to a taking. This court has ruled earlier, that as a legal proposition, plaintiffs' taking theory is valid. *See Eyherabide v. United States*, 345 F.2d 565, 567, 170 Ct.Cl. 598 (1965); *Fadem v. United States*, 13 Cl.Ct. 328, 332–33 (1987); *Bettini*, 4 Cl.Ct. at 757–58. To the extent plaintiffs' takings claim is not exclusively tort based, i.e., the alleged taking of plaintiffs' property, this court has jurisdiction. Accordingly, defendant's motion on count two will be treated as brought under RCFC 12(b)(4), failure to state a claim. Because defendant submitted materials outside the pleadings, its motion will be considered a motion for summary judgment under RCFC 56. *See* RCFC 12(b)(4).

Summary judgment is appropriate when there are no genuine issues of material fact

---

**5.** Plaintiffs, apparently trying to save their negligence claim, implied that jurisdiction was proper because defendant's allegedly negligent actions were a breach of an implied contract with them. However, in their complaint and response plaintiffs failed to allege, by inference or otherwise, any of the necessary elements for an implied-in-fact contract. Because there were no facts alleged that would evidence a promise, representation or statement by any authorized government official that plaintiffs' 20 acres would not be damaged, as either a direct or indirect result of defendant's purchase and use of the adjoining 140 acres, the court finds this claim without merit and not worthy of full discussion here.

and the movant is entitled to summary judgment as a matter of law. RCFC 56(c); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Id.* at 248–50, 106 S.Ct. at 2510–11. "[T]here is no issue for trial unless there is sufficient evidence favoring the non[-]moving party for a [court] to return a verdict for that party. If the evidence [of the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted). While the moving party bears the burden of establishing the absence of any genuine issue of material fact, the party opposing summary judgment must provide competent evidence of a conflict in the record; mere denials or conclusory statements are not sufficient. *Mingus Constructors*, 812 F.2d at 1390–91. If the "record taken as whole would not lead a rational trier of fact to find for the non[-]moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Takings Claims

■ The Fifth Amendment provides that no "private property [shall] be taken for public use without just compensation." It is not essential for the government to have actually taken physical possession of the property; a taking can occur simply when the government by its actions deprives the owner of all or most of his or her interest in the property. *Aris Gloves, Inc. v. United States*, 420 F.2d 1386, 1391, 190 Ct.Cl. 367 (1970). Whether the government's actions amount to a taking ultimately depends in large part on the particular circumstances of the case. *United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958).

Although plaintiffs' complaint asserted only a taking of the portion of its property allegedly cut off by an inaccurate placement of the fence and the allegedly unnecessary destruction (taking) of plaintiffs' trees, both defendant's motion and plaintiffs' response to defendant's motion implied that plaintiffs were also claiming a taking of their entire property due to the government's allegedly negligent actions. The court will address each "takings" scenario separately.

### 1. Alleged Taking of Plaintiffs' Twenty Acre Tract

To support their takings claim for their entire property, plaintiffs alleged that defendant had (1) indicated that it owned plaintiffs' land on at least two maps; (2) restricted and interfered with plaintiffs' access to the property; and (3) allowed or encouraged grazing permit holders to use plaintiffs' land both for grazing and access to other parts of the grazing district. Plaintiffs did not provide the court with sufficient evidence that any of these contentions would rise to the level of a taking in this case.

■ For plaintiffs to prevail on the first allegation there must be some evidence in the record that defendant's publication of maps inadvertently indicating public ownership of plaintiffs' land deprived plaintiffs of all or most of their interest in the property. Mere indication of ownership, without more, does not rise to the level of a taking. *See Hilkovsky v. United States*, 504 F.2d 1112, 1114–15, 205 Ct.Cl. 460 (1974); *Gerlach Live Stock Co. v. United States*, 76 F.Supp. 87, 97, 111 Ct.Cl. 1 (1948), *aff'd*, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950); *Oak Forest Inc. v. United States*, 23 Cl.Ct. 90, 97 (1991). There is no evidence in the record to indicate that defendant's inadvertent publishing of the maps deprived plaintiffs of any tangible interest in their property.

■ In order for plaintiffs to prevail on their second allegation, there must be evidence of a complete denial or deprivation of access to plaintiffs' property. *See Laney*

*v. United States*, 661 F.2d 145, 149, 228 Ct.Cl. 519 (1981); *Foster v. United States*, 607 F.2d 943, 949–50, 221 Ct.Cl. 412 (1979); *Mount v. United States*, 2 Cl.Ct. 717, 720 (1983). The record indicates that the access road was blocked only during infrequent maintenance. This could hardly be considered a complete denial or deprivation of access, nor a deprivation of all or most of plaintiffs' interest in their property.

In their third allegation, plaintiffs contended that defendant allowed or encouraged grazing permit holders to use their land for grazing. For a taking to occur, there must be an intent on the part of defendant to take plaintiffs' property, or an intention to do an act the natural consequence of which was to take their property. *United States v. North American Transp. & Trading Co.*, 253 U.S. 330, 333, 40 S.Ct. 518, 519, 64 L.Ed. 935 (1920); *NBH Land Co. v. United States*, 576 F.2d 317, 319, 217 Ct.Cl. 41 (1978); *Barnes v. United States*, 538 F.2d 865, 871, 210 Ct.Cl. 467 (1976). However, the record indicates that defendant's only intended action was to incorporate the property it purchased from plaintiffs into an existing grazing allotment. While plaintiffs may argue that cattle wandering or being driven on their property is the natural consequence of surrounding plaintiffs' property with National Forest land subject to grazing rights, "[m]erely making property 'accessible to third parties' does not rise to the level of a taking." *Brown v. United States*, 3 Cl.Ct. 31, 48 (1983), *aff'd*, 741 F.2d 1374 (Fed.Cir.1984). Further, New Mexico law places the burden on landowners to erect a fence to keep livestock from trespassing on their property and specifically denies the right of recovery for trespassing animals on unfenced lands. *See* N.M. STAT.ANN. §§ 77–16–1, 3 (Michie 1992); *Kinsolving v. Reed*, 74 N.M. 284, 393 P.2d 20, 20–21 (1964). Because plaintiffs' allegations do not show a direct and substantial interference with their property rights, plaintiffs' "takings" claim for their entire property must fail.

## 2. Alleged Taking of a Portion of Plaintiffs' Acreage

In their complaint, plaintiffs asserted that a "portion" of the fence defendant built encroached on their property by twenty-five feet, thus constituting a taking by inverse condemnation. Plaintiffs' allegation is not supported by the record. Defendant, through proper affidavit, provided facts which indicate that the portion of the fence which was "estimated" was either exactly on the record property boundary, or very close to it, and in any event contained the aliquot part of the section of land indicated by the legal description of plaintiffs' property. Plaintiffs neither submitted any counteraffidavit on this issue or offered explanation as to their failure to do so as required by the Rules of the Court of Federal Claims. *See* RCFC 56(f)–(g). Rule 56(f) provides:

> When a motion for summary judgment is made and supported [by proper affidavit], an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If such party does not so respond, summary judgment, if appropriate, shall be entered against such party.

RCFC 56(f). Because plaintiffs did not meet their burden on this issue, defendant's contention that the fence was placed accurately must be accepted as true. As a result, plaintiffs' "takings" claim must be denied.

## 3. Alleged Taking of Plaintiffs' Trees

Plaintiffs allege that they are entitled to just and fair compensation for the unnecessary cutting of live trees growing on their property. "Both personal and real property are within the protection of the Fifth Amendment." *King v. United States*, 427 F.2d 767, 769, 192 Ct.Cl. 548 (1970). However, no taking of trees can occur unless the government has taken the underlying property. *See Barnes*, 538 F.2d at 874; *Baird v. United States*, 5 Cl.Ct. 324, 330–31 (1984). Destruction of trees without the taking of the underlying land is characterized as a tortious invasion or conversion and not compensable in this court.

*Baird,* 5 Cl.Ct. at 330–31; *see also Barnes,* 538 F.2d at 874; *United States v. Weyerhaeuser Co.,* 392 F.2d 448 (9th Cir.1967), *cert. denied,* 393 U.S. 836, 89 S.Ct. 112, 21 L.Ed.2d 107 (1968). Because the court finds that defendant's allegedly negligent actions did not amount to a taking of the underlying property, plaintiffs' "takings" claim for the trees must also be denied.

*B. Transfer of Plaintiffs' Negligence Claims*

As indicated above, plaintiffs' "takings" claims, count two of their complaint, fail because they have not shown any action by defendant which rises to the level of a taking compensable under the Fifth Amendment. Assuming, *arguendo,* the existence of any wrongdoing by defendant, plaintiffs' remedy, if any, for their count one negligence actions, would be in tort. This court has no tort jurisdiction. 28 U.S.C. § 1491. Section 1631 of the United States Code provides: "Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." 28 U.S.C.A. § 1631 (Supp.1992). Therefore, count one of plaintiffs' complaint, the negligence claims, is hereby ordered transferred to the Federal District Court for the District of New Mexico.

III. CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss count one of plaintiffs' complaint for lack of subject matter jurisdiction and grants defendant's motion for summary judgement on count two. The Clerk of the Court is directed to transfer count one of plaintiffs' complaint to the Federal District Court for the District of New Mexico, and to enter judgment dismissing count two of plaintiffs' complaint. No costs.

IT IS SO ORDERED.

